Good morning, may it please the court, Kent Young Federal Defenders, on behalf of Mr. Medrano. In revoking Mr. Medrano's supervised release and imposing a term of imprisonment the district court did not apply to criminal history category 3 that it applied in 2011 when imposing the term of supervised release. Instead, the district court applied a criminal history category 4, the criminal history category it applied when it first sentenced Mr. Medrano in 2004. The district court's failure to apply the criminal history category 3 that it applied in 2011 was aired in violation of United States sentencing guidelines section 7B1.4. Section 7B1.4 instructs the district court to apply the criminal history category applicable at the time the defendant originally was sentenced to a term of supervision. The phrase originally was sentenced to a term of supervision refers to the term of supervised release being revoked and not the first sentence imposed for three reasons. First, the context and purpose of section 7B1.4 indicate that the phrase originally was sentenced to a term of supervision refers to the term of supervised release being revoked. Second, binding commentary to section 7B1.4 indicates that the phrase originally was sentenced to a term of supervision refers to the term of supervision being revoked. And third, the rule of lenity counsels in favor of Mr. Medrano's interpretation to the extent there is any ambiguity. With regard to the context and purpose, this court has held that in interpreting a guideline, this court looks to the context and purpose of the sentencing guidelines as a whole in interpreting them. And the purpose of revoking supervised release is to sanction the violator for breaching the court's trust. Chapter 7, the introductory commentary specifically states that the purpose of imposing a term of imprisonment for a violation of supervised release is to, quote, sanction the violator for failing to abide by the conditions of the court-ordered supervision, unquote. Similarly, this court has also held in United States v. Mittel that the purpose of revoking supervised release and imposing a term of imprisonment is to sanction the violator for failing to abide by the conditions of supervised release. And here it was the 2011 judgment and commitment order that Mr. Medrano violated that had specific terms of supervised release that he failed to adhere to. It was not the 2004 judgment and commitment order. So I would submit that it would make no sense to apply a criminal history category untethered to the actual terms of supervised release that Mr. Medrano was violating. With regard to binding commentary, note one of... But your theory, counsel, then, let's say a defendant is placed on supervised release in the year 2000 for three years, and in the three-year period he violates three, four times. Every time the court brings him in for a violation of supervised release, there has to be a recalculation of the guidelines? No, there does not have to be a recalculation. The district court is supposed to apply the criminal history category it applied when imposing the term of supervised release. And so this case has kind of a complicated procedural history. Well, I'm trying to figure out the logical extension of your argument, because the guidelines, the category that's determined at the time the defendant was originally sentenced to a term of supervision could suggest the time he was originally sentenced. That makes sense, right? But you're saying that that term actually means the time that he was revoked and then placed, sentenced to a term of imprisonment for the violation of supervised release, and then supervised release was reimposed. That means if you violate three or four times, and there's been changes in the guidelines in the interim, you'd have to recalculate the criminal history each time. Is that the logical extension of your argument? I suppose it is. Under, of course, Section 1B1.11, the district court is instructed to apply the current version of the guidelines, which is what happened here in 2011. And that was defense counsel's argument that because of the elimination of recency points, the district court should apply the current version of the guidelines, which is what happened. He looked back in time to the criminal convictions that he had in 2004, and then applied a criminal history Category 3 based on the elimination of recency points. So if the recalculation results in a greater criminal history, a defendant would live with that too? There could be ex post facto problems with that, because I know that Section 1B1 does the guidelines on the day the defendant is sentenced, or there's a more favorable version. You generally go with the more favorable version. So I think in that instance, because of the potential ex post facto problems, it probably wouldn't be the exact same scenario. With regard to the commentary, so Note 1, of course, instructs not to recalculate the criminal history category. And as we've argued in our briefing, there's really two reasons why Note 1 supports Mr. Medrano's interpretation. First, Note 1 has the phrase, the first sentence reads, the criminal history category to be used in determining the applicable range of imprisonment in the revocation table is the category determined at the time the defendant originally was sentenced to the term of supervision. And the use of revocation table in conjunction with the phrase, the term of supervision, indicates that the phrase, originally was sentenced to a term of supervision, refers to the term of supervised release being revoked, because it's referring to revocation table and the ranges in the revocation table. And second, Note 1 expressly includes the phrase, the term of supervision being revoked. So it's clear that it's referring to the term of supervision being revoked in that note in 7B1.4. And as far as the rule of lenity goes, Mr. Medrano takes the position that Section 7B1.4, the phrase does refer to his particular interpretation. But to the extent that there is any ambiguity, it should be resolved in Mr. Medrano's favor under the rule of lenity. If the court has no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Caroline Hahn on behalf of the United States. Your Honors, 7B1.4 advised the District Court that it should apply the criminal history category that was applicable to the defendant at the time that the defendant was originally sentenced to a term of supervised release. That criminal history category was Criminal History Category 4, and so the District Court properly calculated the criminal history category in that case. Mr. Medrano has argued that the language, and that is where the panel should rest, on the plain language of the guideline. Mr. Medrano has asked you to look to the commentary and the language about that which was just determined when he was sentenced to a term of supervised release in 2011. The important thing about both the language in the guideline and the guideline, originally the Webster's definition… You know, this whole business is about working out puzzles, right? You know, so that's what we do when we look at these horrible sentencing guidelines. So, what's wrong with this argument? What's wrong with Mr. Medrano's… He's working out the puzzle, you know, he points to this, he points to that, he talks to the rule, but let me… Your Honor, what's wrong with Mr. Medrano's, with his argument is essentially that when there is an inconsistency between the guideline and the commentary, the guideline prevails, that is the circumstant precedent in United States v. Orlando. Especially in this case, they're not entirely inconsistent, though. My point that I was making was that originally is in that language from the guideline itself, as well as in the language from the commentary, and what originally means Webster's definition is… Anyway, you know, look, the Supreme Court has told us that these guidelines are unconstitutional, but we should, nonetheless, think about them and look at them in a different light. Look to them for some guidance, and if we're unhappy, the judge doesn't feel comfortable with how the guidelines come out, then we have 3553, and you say some words, and you go where you want to go, right? So, that's what the judge, in a sense, did here. He departed downward and imposed an eight-month additional penalty. Yes, Your Honor, and that sentence was… What's wrong with that? Oh, nothing at all, Your Honor. Your Honor, that sentence was absolutely reasonable because, as you indicated, the district court did properly apply 7B1.4 and then looked at various factors, stated that the district court was sentencing Mr. Medrano for the breach of the court's trust, discussed deterrence, also discussed the family circumstances that Mr. Medrano had and that the district court understood why it was that Mr. Medrano wanted to return to the United States, but also discussed his bad criminal history, and in light of this being his fourth immigration incident, he felt that that eight-month sentence was appropriate. That was actually the exact same sentence… Refresh my memory. What was Mr. Medrano's family situation here? Your Honor, my understanding is that Mr. Medrano had an elderly mother who he was the primary caretaker for. That's what his statements were. Your Honor, that's what I understand that counsel had stated at the sentencing. And did he have any family here? Mr. Medrano? Yes. Your Honor, the only family that… In the pre-sentence report that the United States submitted to you all, it does appear that he has relatives here in the United States, and I believe that his elderly mother continues to live here in the United States. So he made a number of crossings to take care of his elderly mother, right? Your Honor, that may have been the claim, Your Honor, but when he… For example, in 2007, when he initially returned after the 2004 conviction, it appears that he also had a… He had an arrest then for a DUI refusal, and so, although he may have returned for a noble reason, he also was placing the rest of the community in danger, for example, of that DUI. He had a what? A DUI? A DUI refusal, Your Honor, as a law enforcement contact. He was not prosecuted, but he was arrested, and that was the basis of the original… The first supervised release violation for which he was sentenced in 2011. DUI refusal, meaning that he refused to take the… The breathalyzer exam. Yes, Your Honor. And he got an 8-month sentence each time, so the same as when the district court gave him the benefit of the criminal history category 3? Yes, absolutely, Your Honor. Your Honor, so in 2011, when it was criminal history category 3, the range was 8 to 14 months. The district court sentenced him to 8 months, taking into account the concern about recency and the recent change in the guideline. However, fast forward to 2013, the guideline range he finds to be 12 to 18 months, and he does not take out those recency points because it's actually… At that point, Mr. Magiano is actually in criminal history category 5, and he has only shown that it is a good indicator of his continuing violations of supervised release, that those points are actually accurately applied in this particular individual's case because of his fourth immigration incident, his misdemeanor 1325 conviction in 2012, and the felony 1326 conviction in 2013. And so for those reasons, Your Honor, Your Honors, we believe that the sentence was reasonable given that the district court sentenced for a breach of the court's trust, and with that, we would submit unless there are further questions. Thank you. All right. Thank you. I just have one point briefly because it seems like some of the government's argument was addressed towards harmlessness, and as we pointed out, I think it came up during the government's argument, the district court applied a 12 to 18 month guideline range in this case. Our argument is that the correct guideline range was 8 to 14 months, and under this court's case law, if the district court relies on an incorrect guideline range in And there's two cases we've cited, Hammonds and Vargum, I think that both support that position. If the court has no further questions, I'll submit. But you're not challenging the 8 month forgery. Our position is that defense counsel requested a 6 month sentence to run, this was a combo proceeding before the district court, there was the new 1326 violation, and there was also the revocation proceeding. So defense counsel asked for an 18 month sentence on the new 1326, and then a 6 month consecutive sentence for the supervised release violation. So our position is the district court could have imposed the 6 month sentence requested by defense counsel under 3553A could have varied downward from 8 to 14 months and given the 6 month sentence. Instead what happened here is the district court had the wrong guideline range under our view of 12 to 18 months, varied downward under 3553A and imposed an 8 month sentence. So our position is that had it started with the correct range, it could have varied downward and imposed the sentence requested by defense counsel. And I think Hammonds is a particularly helpful case in that regard. The district court in that case imposed a sentence that ultimately fell within the district court's analysis from the wrong guideline range, that it was a procedural error that required reversal. Vargam is another case, a recent one, where the district court imposed a sentence below the correct guideline range but was still higher than what defense counsel requested, and so because it relied on the wrong range, it required reversal. If the court has no further questions, I can now submit. Thank you. Thank you very much. All right, this matter is submitted.
judges: Pregerson, Fernandez, Nguyen